THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JAMES LANA, Defendant.

County Court, Kings County, July 27, 1962.

*Frances Kahn* for defendant. *Edward S. Silver,* District Attorney (*Aaron Nussbaum* of counsel), for plaintiff.

HYMAN BARSHAY, J. This is an application in the nature of a writ of error *coram nobis* to vacate and set aside a judgment of conviction dated November 24, 1958, convicting the defendant, on his plea of guilty, of the crime of possession of narcotic drugs, as a felony, in violation of subdivision 3 of section 1751 of the Penal Law and sentencing him as a third narcotics felony offender under subdivision 2 of section 1941 of the Penal Law to a term of not less than 15 years to life in State prison.

The judgment of conviction was unanimously affirmed (10 A D 2d 646). Leave to appeal to the Court of Appeals was denied; certiorari was denied by the United States Supreme Court (364 U. S. 832).

The petition alleged that his former counsel "represented himself as a former Assistant District Attorney of Kings County who was in a position, as such, to unduly influence the Assistant District Attorney in charge of the prosecution; that he could obtain a favor both from the Assistant District Attorney and the Court with respect to sentence; that he asked petitioner for a payment of several thousand dollars since he had convinced the Assistant District Attorney and the judge not to use the prior Federal drug convictions against petitioner; that his attorney made misrepresentations and misstatements of fact; that he had participation and concurrence of the sentencing Court and the Assistant District Attorney in charge of the prosecution; that the petitioner would not be sentenced to the mandatory term of life imprisonment as a third drug felony offender; that petitioner was thereby induced to enter a plea of guilty."

A hearing was granted on consent of the District Attorney.

At the very outset of the hearing, the defendant's counsel conceded that neither the court nor the District Attorney had made any promise whatever to the defendant regarding sentence.

The minutes of the court proceedings of May 12, 1958 conclusively establish that no promises of any kind were made to the defendant either by the court, the Assistant District Attorney or his own counsel, as an inducement to his entry of the plea of guilty. The District Attorney's trial sheet indicates the first trial date to be February 19, 1958. Adjournments were had to the 16th of April, the 18th of April, the 5th of May, the 6th of May, and finally to the 12th of May. The adjournments were had for the purpose of affording defendant's counsel opportunity to move to set aside his prior convictions in the Federal courts to avoid a mandatory sentence as a third drug felony offender. On May 12, 1958, the minutes of plea record the following:

MR. SILVER: There are a number of writs of coram nobis held in the Federal Court, and I would like to have an understanding that no sentence would be put on here before those writs are disposed.

THE COURT: Well, we will do it this way. When the question is asked of him on sentence, whether there is any legal cause to show why the judgment of the law should not be pronounced, you will say it then. On the day that the sentence comes on, put it in writing and we will act on it then, not before. No promises of any kind.

MR. SILVER: Can I have a couple of minutes with my defendant?

THE COURT: Yes. (Conference at the Bench).

THE COURT: What is the application now?

MR. SILVER: At this time, Your Honor, the defendant wishes to withdraw his plea of not guilty and in its stead to enter a plea of guilty to the second count of the indictment, to cover the entire indictment.

THE COURT: Mr. Hoey, you know all about this case?

MR. HOEY: Yes, Your Honor.

THE COURT: Do you make the recommendation?

MR. HOEY: I recommend the acceptance to the second count of the indictment, which is a violation of section 1751 of the Penal Law, Subd. 3, which is possession of more than ¼ of an ounce.

THE COURT: And that is a felony?

MR. HOEY: That is a felony. In this case, there was approximately 20 ounces of heroin.

THE COURT: Relying on the District Attorney, who knows all about the case, I will accept the plea, after certain questions are asked of this defendant.

BY THE COURT: (To the defendant): Q. Mr. Lana, do you speak English? A. Yes, sir. Q. Mr. Aaron Silver, is you lawyer? A. Yes, sir, Your Honor. Q. And he stands alongside of you now? A. Yes. Q. This case has been on several times before, has it not? A. Yes, sir. Q. Has he always been your lawyer? A. Yes. Q. Did you hear what he asked the Court to do. A. Yes, sir. Q. Did you authorize him to make that application? A. Yes, Your Honor; to plead guilty. Q. To plead guilty to the second count of the indictment to cover this indictment, which is possession as a felony? A. Yes, Your Honor. Q. You have a very long record? A. Yes.

THE COURT: I hope no promises were made to you of any kind with respect to sentence, but if they were, you better disregard them. Nobody had any right under any condtions to make any promises, is that clear?

THE DEFENDANT: Yes.

THE COURT: You are taking that plea with that understanding?

THE DEFENDANT: Yes, sir.

THE COURT: The judge imposes the sentence, and no one else. and I, cannot promise you anything, and I never do, and I never will. Do you take this plea of your own free will?

THE DEFENDANT: Yes, sir.

THE COURT: On September 16, 1957, in the Borough of Brooklyn, County of Kings, did you have in your possession and under your control a preparation compound or mixture, containing one per cent of the alkaloid of heroin of the total weight of more than ¼ of an ounce?

THE DEFENDANT: Yes.

THE COURT: You say that is the truth?

THE DEFENDANT: Yes.

THE COURT: And that is why you are pleading guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Take the plea.

BY THE CLERK: Q. What is you name? A. James Lana. Q. After consulting with your attorney, Mr. Aaron Silver, who stands beside you, do you now wish to withdraw your former plea of not guilty heretofore entered and now do you wish to plead guilty to the crime of violation of Sec. 1751 of the Penal Law, Subd. 3. to wit, possession of narcotics as a felony, under the second count of the indictment to cover the indictment? A. Yes. (Defendant pleads guilty; pedigree taken.)

THE COURT: The defendant is remanded.

MR. SILVER: May I ask that the sentence be postponed as late as possible.

THE COURT: The case takes its regular course.

On June 30, 1958, the defendant was arraigned on an information charging him with being a third felony drug offender. He stood mute. The matter was marked off the calendar for trial of the issues alleged in the information. On September 22, 1958, the defendant's counsel applied for an adjournment on the ground that the proceedings in the Federal court with respect to his convictions were not disposed of. The matter was adjourned until October 6, 1958. On October 6, 1958, the defendant failed to appear because "he was in the United States District Court on a writ." At that time, the following took place:

THE COURT: I warned the lawyer in this case, after several adjournments, * * * that the case must be disposed of today. Find out from the District Court what the situation is there. I will deny the application for an adjournment. The defendant is to be brought before me the moment he is released from the Federal Court, whether it is tomorrow, or the next day, or the next day. I do not like this kind of practice. He had ample opportunity to inform you Mr. Davey, and the Court, in this case. He did not do so.

MR. DAVEY: He did not.

THE COURT: This is about the fourth adjournment that the lawyer has had for one reason or another, and none of them are legal. See that the defendant is brought here.

On October 7, 1958, neither the defendant nor his counsel appeared. A representation was made to the court by a representative of counsel that counsel is out of town. The matter was adjourned to October 15, on which date the matter was adjourned to November 3, with instructions to counsel to advise the Federal court of the need for the disposition of the matters pending there with respect to this defendant's prior convictions. The proceedings were adjourned to November 3, 1958, at which time, in the presence of his counsel, an information was again read to the defendant charging him with being a third drug felony offender. The defendant admitted each of the allegations therein contained and he was adjudged a third felony narcotics offender.

On application of his counsel, sentence was postponed to November 17, 1958 and on that day it was postponed to November 24, at which time the defendant was sentenced as aforesaid.

Defendant testified as follows: that he was arrested in September of 1957, for possession of narcotics; that he retained Aaron Silver to represent him. There was no written retainer; that after he was released on bail, his attorney told him he would be charged with a misdemeanor; that he gave his attorney $3,100 before he was indicted; that on January 30, 1958, after he was indicted Mr. Silver told him: "it looks like they are not going to charge you with the Federal Court convictions"; that

on May 6, he gave Mr. Silver two bankbooks, reflecting deposits of $4,500 or $5,000, and the power of attorney to withdraw the money on deposit; that on May 12, 1958, he appeared in court and Mr. Silver told him he could not get him a plea to a misdemeanor; that he would have to plead guilty to a felony as a first offender, and that he was not being charged with the Federal court conviction; that when he pleaded guilty, he thought he was pleading guilty as a first felony offender; that in all, he gave Mr. Silver $3,100, in cash, in addition to the money on deposit in the banks, a total of approximately $8,100; that on June 30, 1958, he learned for the first time he was going to be sentenced as a third felony offender; that he asked Mr. Silver to return the money and to withdraw his plea of guilty; that Mr. Silver said, " Don't worry because when you go to Federal Court, I'll fix everything up "; that on November 3, 1958, he was arraigned on a third felony offender information and in accordance with Mr. Silver's instructions admitted his identity and the two prior Federal convictions; that he was adjudged a third felony offender; that Mr. Silver never informed him that his *coram nobis* application in the Federal court had been denied; that on November 19, 1958, he asked Mr. Silver, at the Raymond Street Jail, to return all the money to his wife; that he wanted to retain another lawyer; that Mr. Silver told him not to worry, because he was going to take an appeal; that on November 12, 1958, he was sentenced; that Mr. Silver returned $4,500 on December 2, 1958.

On cross-examination he testified that on March 3, 1931, on his plea of guilty he was convicted in the Federal court, Southern District, of selling narcotics and sentenced to a term of two years to the United States Penitentiary; that on June 16, 1937, he was convicted in the Southern District Court, of the crime of unlawfully selling narcotics and conspiracy, and was sentenced to a term of four years in Federal prison; that he pleaded guilty to the felonious possession of narcotics in the instant case because his lawyer told him he was pleading guilty as a first offender; that he was not guilty of that crime because the narcotics were not found in his apartment; that he did not tell the Probation Department that he was holding the narcotics in a shoe box for a fellow by the name of " Whitey "; that " Whitey " was invented by his lawyer; that he admitted both to the police and to the court, when he pleaded guilty, that the narcotics were his; that on June 30, 1958, his lawyer offered to withdraw his plea of guilty but the court denied the application (the minutes of the proceedings of that date do not reveal any application to withdraw the plea of guilty); that before he pleaded guilty,

his lawyer took him to the District Attorney's office and asked him to co-operate but they were dissatisfied; that when he learned that the promise the lawyer made to him " that he would not be charged with the prior Federal Court convictions " was not a fact, he did not complain to the court, because his lawyer told him not to say anything; that neither the court nor the District Attorney made any promise to him; that his lawyer told him the District Attorney said he could be a first felony offender; that his lawyer did not tell him he was pleading guilty as a third offender; that he has no receipts for the money he paid to Mr. Silver; that he gave Mr. Silver a total of $8,100; that when he appeared in court on June 13, he remained mute; that if he knew that his lawyer was not telling all the facts to the court or was misrepresenting the facts to the court, he would have said something but his lawyer told him to stay quiet; that he entered into an agreement with his lawyer to represent him, on the basis that he (his lawyer) would try to have him treated as a first offender and not as a third offender.

Aaron Silver called by defendant as his witness, testified that he had not made any false promises or misrepresentations; he denied the allegations in the petition that he said he " was in a position to unduly influence the Assistant District Attorney or the Court; denied that he, in any manner, induced the petitioner to plead guilty; denied that the Assistant District Attorney ever told him that the petitioner would be treated as a first offender; denied that he ever made any such representation to the petitioner,". He testified that the *coram nobis* writ he obtained in the Federal court was denied, and thereafter the defendant's wife discharged him as her husband's attorney; that prior thereto, he had every intention to file a notice of appeal from the Federal court's adverse determination and to attack the judgment in the State court on the ground of the invalidity of the sentence of the defendant as a third drug felony offender; that his oral retainer with the defendant's wife was to cover all services including the possibilities of *coram nobis* against the Government and the possibility of attacking the State statute making him a third multiple offender; that he agreed to a fee of $7,500, included the cost of printing the minutes on appeal; that he told the defendant, that unless he co-operated with the authorities in naming the supplier he, the defendant, would face a sentence of not less than 15 years to life; that he appeared at the office of the District Attorney on several occasions, conferred with an Assistant District Attorney in charge of the narcotics bureau; that defendant failed to co-operate with the authorities; that he thereafter advised the defendant that unless

he succeeded in setting aside the Federal convictions, the defendant would be sentenced to a minimum of 15 years to life; that he attempted but failed to get a misdemeanor plea for the defendant; that on May 6, 1958, he asked the court to remand the defendant pending sentence because he was advised by the defendant's brother that the defendant intended to jump bail; that he received but $5,600 of the sum agreed upon in the oral retainer; that on December 2, 1958, he returned $4,500, to defendant's wife; that he received no complaint whatever from the defendant or his family regarding any alleged misrepresentations until three years subsequent to the date of sentence; that the entire financial transaction was in cash.

Defendant's application is based upon the sole ground that his retained counsel induced the plea of guilty by misrepresenting that because of his alleged influence with the court and Assistant District Attorney the two prior Federal convictions would not be used against him and that he would be sentenced as a first felony offender.

It has been held that the remedy of *coram nobis* is not available where the defendant claims he was misled by counsel (*People* v. *King*, 284 App. Div. 1015; *People* v. *Turman*, 279 App. Div. 983). "Where the defendant is induced by fraud or misrepresentation on the part of the court or the prosecutor to enter a plea of guilty it is clear that the conviction is not based on due process of law" (*People* v. *Vance*, 7 A D 2d 661, 662). The defendant, however, makes no claim of fraud, coercion, misrepresentation or improper conduct on the part of the court or prosecutor in the procurement of the plea of guilty, or any denial of constitutional or statutory rights.

The alleged misrepresentation of counsel, even if proven, would not justify relief through *coram nobis*. Although cases may arise where it may be found " that the constitutional rights of a defendant are violated because the representation of retained counsel is inadequate (see *Powell* v. *Alabama*, 287 U. S. 45), this is not such a case. The alleged misconduct of counsel chosen by defendant cannot be attributed to ' action on the part of the State ' (see *People* v. *Tomaselli*, 7 N Y 2d 350, 354; *People* v. *Brown*, 7 N Y 2d 359) and even if proven would not constitute a denial of due process." (*People* v. *Hernandez*, 8 N Y 2d 345, 347.)

Were I to accept as true, defendant's claim that he retained counsel relying on the latter's express promise of being able to obtain a misdemeanor plea or that in any event he would be sentenced as a first offender because of his counsel's alleged influence with the court and District Attorney, the defendant

would be estopped from invoking his own fraud as a basis for *coram nobis* relief. In *People* v. *Moore* (284 App. Div. 925, 926), the court held: "Defendant's claim for relief rests entirely on his allegations of his attorney's incompetence, trickery, fraud and misrepresentation. It is not disclosed how such shortcomings of the attorney involved or affected either the court or prosecutor. Defendant claims to have delivered to his attorney a document which would have established his innocence, but which was not used in his behalf. Several weeks elapsed between the arraignment and sentencing. If his claim is correct, it is obvious that during such period defendant must have been aware of the fact of his attorney's possession of such document and neglect to use it for his benefit. He does not show that the attorney's neglect, if neglect there was, was unknown to him and that he was thereby prevented, in the exercise of reasonable diligence, from bringing the matter to the court's attention. Since it does not appear that he was without knowledge of the situation as to the document at the time, and since he apparently did not divulge to the court that which he now claims might have been for his benefit, he should not now be heard to ask the court to relieve him of the consequences of his own act. Order unanimously affirmed."

The defendant has failed to sustain his burden of proof by a fair preponderance of the credible evidence.

While I find that the defendant knew he was pleading guilty to a felony; that he was being treated as a third drug felony offender; that he knew his sentence was being postponed from time to time for the purpose of obtaining relief in the Federal court, I disapprove of counsel's entering into an oral retainer in this case. It would have been more prudent for counsel to have explicitly set forth the terms of his retainer, precluding defendant, four years after his conviction, from creating an embarrassing situation for counsel. The application is denied.